UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 05-42197 |
| | ) | Chapter 7 |
| DAVID LEE KLUNDT | ) | |
| | ) | |
| and | ) | DECISION RE:  TRUSTEE'S MOTION |
| | ) | FOR APPROVAL OF SETTLEMENT |
| SHARON RUTH KLUNDT, | ) | AND PAYMENT OF CERTAIN CLAIMS |
| d/b/a Timelesscents And Fine Things, | ) | |
| | ) | |
| Debtors. | ) | |

The matter before the Court is Trustee John S. Lovald's Motion to Approve Settlement of Litigation Claims.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).  As set forth below, the trustee's motion will be granted in part and denied in part.

I.

David Lee Klundt and Sharon Ruth Klundt ("Debtors") filed a joint petition in bankruptcy under chapter 7 on October 13, 2005.  Among their assets, Debtors scheduled a personal injury claim held by Debtor Sharon Klundt from an automobile accident that occurred June 30, 2005.  They valued this asset at $3,753.00 and claimed it all exempt.  Among their liabilities, Debtors scheduled *inter alia* several claims held by medical care providers or collection agents for medical care providers. By order entered March 14, 2006, the bankruptcy estate employed David J. King to litigate personal injury claims for each debtor on a contingency fee basis arising from

the June 30, 2005 incident.[1]  Proofs of claims have not yet been requested by the case trustee.

Attorney King communicated with Debtors' automobile insuror, State Farm Mutual Automobile Insurance Company ("State Farm"), by letters on February 15, 2006.  He told State Farm Debtor David King was seeking $1,289.30 from his available $5,000.00 medical expense payments coverage.  The sum sought represented July 1, 2005 and July 6, 2005 services by three medical providers.  Attorney King told State Farm Debtor Sharon King had medical bills of $10,040.56, it had already paid her $1,144.00, and she wanted the $3,856.00 balance of the $5,000.00 policy limit.

State Farm responded to Attorney King on March 7, 2006.  State Farm gave Attorney King a check for $1,289.30 for Debtor David Klundt's medical bills and $4,731.00 for Debtor Sharon Klundt's medical bills.  Through attachments to its letter, State Farm advised Attorney King that, to date, it had directly paid Albrecht Chiropractic $178.00 on December 2, 2005 and Dr. Drake $12.00 on December 29, 2005 and $79.00 on January 9, 2006, for a total of $269.00, which was less than the $1,144.00 Attorney King thought State Farm had already paid.  State Farm's

---

[1] The application itself referenced only the personal injury claim held by Debtor Sharon Klundt.  Attached to the application were two attorney fee contracts dated July 5, 2005.  Each referenced personal injuries that occurred June 30, 2005.  One was signed by Debtor Sharon Klundt and the other was signed by Debtor David Klundt.

attachment did not indicate when the medical services associated with these payments were rendered.  Supplemental stipulated facts filed by the parties indicate the paid-for services were rendered pre-petition by Albrecht Chiropractic but post-petition by Dr. Drake.  It also appears these invoices were all paid on claims filed by the medical providers themselves, not Debtors.  State Farm's payment statement also indicated a $978.00 payment to Dr. Drake on December 28, 2005 was now "void," but the circumstances regarding that entry were not a part of the original record.  The parties later stipulated this invoice was not paid because it was an estimate for future services by Dr. Drake, not a bill for actual services rendered.  In sum, while Attorney King had thought State Farm had already paid $1,144.00 in medical expenses on Debtor Sharon Klundt's behalf, it had actually paid only $269.00.  Of the $269.00, $91.00 was for post-petition services rendered by Dr. Drake.  Unpaid, pre-petition medical debts arising from the June 30, 2005 accident for Debtor Sharon King totaled $8,573.82, well over her $5,000.00 policy limit.

By letter dated May 23, 2006, State Farm advised Attorney King it intended to seek, without his legal assistance, subrogation for $6,289.30 and advised him to not take any action to jeopardize its subrogation rights.  As discussed below, that issue will not be addressed through this settlement motion.

On June 8, 2007, the case trustee, John S. Lovald, filed a Motion to Approve Settlement of Litigation Claims (doc. 16).  Therein, he described the four components

to the proposed settlement:

    1. $4,731 has been collected and is being held by attorney King with regard to insured medical payments coverage of Debtor Sharon Klundt with State Farm Insurance.

    2. $1,289.30 has been collected and is being held by attorney King with regard to insured medical payments benefits collected in connection with David Klundt's claim.

    3. The offer of settlement with regard to Sharon Klundt's case is $13,500.  Attorney King has run a case evaluation with regard to that claim with jury verdict research which has predicted a probable verdict amount of $6,594.

    4. The settlement offer with respect to David Klundt's personal injury claim is $2,091.  The jury verdict research case evaluation indicates a probable verdict of $3,253.

. . . .

Trustees requests that the settlements be approved as the settlements are in the best interest of the bankruptcy estate.  Attorney's fees and costs have been incurred in this matter by Mr. King and a separate application for approval of those fees and costs will be filed by Trustee.

Debtors are entitled to an exemption claim from the settlement proceeds of $3,009.97.  Debtors had originally claimed $3,753 exempt from the settlement on Schedule C which left their exemption claim at the maximum $10,000.  Subsequent to filing, Debtors amended their exemption claim to claim the prorate accrual from their 2005 federal income tax refund exempt in the amount of $543.03, and as a consequence, agreed to reduce their claim against the personal injury proceeds to $3,209.97.

Trustee requests authority to disburse $3,209.97 to Debtors from settlement proceeds in satisfaction of their exemption claim.

In addition, Debtors have incurred a post-petition dental bill to Timothy Drake, DDS for $806.26 which should be paid as a priority claim against the medical pay coverage collected and held by attorney.

>Trustee requests authorization from the Court that the post-petition medical claim in said amount be paid by attorney from the medical pay proceeds which attorney is holding.
>
>Debtors' insurance carrier, State Farm Insurance Company is asserting a subrogation claim against settlement proceeds of $1,289.30 in the David Klundt case, and $4,731 in regard to the Sharon Klundt case. While State Farm has indicated a willingness to settle for lesser sums, the claim is not properly perfected under SDCL 44-2, and said insurance carrier is not entitled to priority from the net proceeds of this litigation. Trustee requests that the Court deny the request of State Farm Insurance for priority status from the settlement proceeds.

No party in interest timely objected to the trustee's motion.

After reviewing the proposed settlement and original record, the Court by letter (doc. 26) asked Trustee Lovald to file a supplement to his motion to explain the legal basis for paying Dr. Drake's post-petition dental care bill from the settlement proceeds. The Court also advised Trustee Lovald it could not disallow State Farm's claim through only the settlement motion because of notice problems. In his response (doc. 28), Trustee Lovald argued, citing therein a bankruptcy court decision from New York:

>To the extent that post-petition un-reimbursed medical expense has been identified, as it has here, such amount should be paid from the med pay proceeds first, and not counted against Debtors' otherwise allowable exemption claim.
>
>While not applicable in this case, a case could clearly arise where the lion's share of the medical expenses could accrue post-petition, and if left unpaid, seriously jeopardize the Debtors' fresh start through the bankruptcy process.
>
>Where the settlement has identified a fund payable from Debtors' own insurer, to be devoted to payment of un-reimbursed medical expenses, the post-petition claim as identified in this motion should be

first satisfied from that fund before application of the balance of the proceeds to payment of pre-petition expenses of general unsecured creditors.

So it could better address the issues raised by the proposed payment of Dr. Drake's post-petition claim, the Court, by an interim letter decision and order (docs. 32 and 33), directed parties in interest to file stipulated facts and briefs. The Court identified two related issues: whether the medical expense payments from State Farm are property of the bankruptcy estate and whether Dr. Drake's unpaid bill for post-petition services could be paid from the total settlement funds [the Court did not know at that time that all three of Dr. Drake's bills were for post-petition services].

Trustee Lovald and Debtors timely filed stipulated facts (doc. 38); Dr. Drake did not participate in their effort. In addition to those facts set forth above, Trustee Lovald and Debtors acknowledged both debtors were injured in the June 30, 2005 accident, but only Debtor Sharon Klundt's personal injury claim had been scheduled in the bankruptcy as an asset and claimed exempt up to $3,753.00. They also acknowledged Debtors' "medical payment insurance claims" had not been scheduled by Debtors or claimed exempt. The parties attached copies of Attorney King's correspondence to and from State Farm and a copy of Debtors' policy of insurance with State Farm. Trustee Lovald and Debtors further stipulated:

> All of the bills listed in support of the applications for payment of the insurance coverage were incurred prepetition (as disclosed on Exhibits B and C) and have been listed by Debtors on Schedule F of their bankruptcy Schedules. In addition Debtors have incurred a post petition

      bill, arising from the accident, to Doctor Timothy Drake in the amount of $806.26. Debtors, if successful in excluding the medical payment insurance proceeds from the chapter 7 estate, will use a portion of those proceeds to pay the bill. Neither Debtors, their Attorney, or Trustee have been notified by Doctor Timothy Drake that he claims an interest in the insurance proceeds.

Under Debtors' vehicle insurance policy with State Farm, State Farm agreed to pay "reasonable and customary medical expenses" for bodily injuries from an accident. The policy further provides State Farm will pay these claims for services rendered up to two years after the accident.

As for payment of a claim, the policy says State Farm "may pay the injured *person* or any *person* or organization performing services [emphasis in the original]." It also sets forth the duties for a "*person*" making a claim [emphasis in the original]. While "person" is a defined term under the policy meaning "a human being," part 4 of the "Reporting a Claim" section of the policy does not clarify whether person means the injured person, a person performing services for the injured person, or either. The parties did not identify, and the Court was unable to find, any provision in the policy that required the insured or injured person, if he receives the medical expense payments, to then in turn pay the medical care providers.

In his brief, Trustee Lovald argued the proceeds from State Farm pursuant to Debtors' insurance policy are proceeds of the bankruptcy estate under 11 U.S.C. §§ 541(a)(1) and (6), and are not subsequently removed from property of the estate pursuant to 11 U.S.C. § 541(b). Citing some case law, he reasoned when an

-8-

insurance policy provides for payment of benefits to the insured directly, and not to a third party, such as a creditor, the benefits are property of the estate and are to be used for the benefit of all creditors.  Because the benefits here were paid under a casualty policy and made payable to Debtors, he urged the Court to conclude the benefits were property of the estate.[2]

As to Dr. Drake's unpaid post-petition bill, Trustee Lovald argued Debtors could seek additional benefits under their insurance policy to the extent of its limits and such funds, which reflect post-petition claims, would not be property of the estate.

In their brief, Debtors conceded the insurance policy and Debtors' rights under that policy were property of the estate.  They contended, however, ownership of the *proceeds* from the policy is a different question that must be considered under the circumstances presented.  Since the policy said State Farm could pay the injured insured *or* the medical provider, Debtors argued Trustee Lovald on the petition date did not have a contractual right to demand direct payment from State Farm to the bankruptcy estate and so the proceeds should not be deemed property of the estate.

As to the payment of Dr. Drake's claim for medical services provided post-petition, Debtors noted Attorney King had included $978.00 for Dr. Drake in the list of unpaid medical bills he submitted to State Farm.  Debtors therefore argued that sum is held in a constructive trust for Dr. Drake, and the exclusion of his claim from those

---

[2] Trustee Lovald also discussed State Farm's subrogation rights in his brief, but that particular issue is not addressed in this decision.

to be paid would jeopardize their fresh start. They did not identify any statutes or case law in support of these arguments.

II.

The property of the estate provisions of 11 U.S.C. § 541(a) are broad in scope and include all of a debtor's legal or equitable interests in property on the petition date. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983). When ascertaining the existence and scope of a debtor's legal or equitable interests in property, the courts look to state law or other nonbankruptcy law. *Butner v. United States*, 440 U.S. 48, 54 (1979); *see Begier v. I.R.S.*, 496 U.S. 53 (1990) (trust fund taxes under federal law are not property of the bankruptcy estate). In this contested matter, the burden of establishing, by clear and convincing evidence, that a particular asset is property of the bankruptcy estate rests with Trustee Lovald. *See Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990) (cites therein), and *DeBold v. Case (In re Tri-River Trading, LLC)*, 329 B.R. 252, 263-64 (B.A.P. 8th Cir. 2005), *aff'd*, 452 F.3d 756 (8th Cir. 2006). The burden of going forward shifts to those claiming otherwise once Trustee Lovald has made his *prima facie* case, though the final burden rests with Trustee Lovald. *See Evans*, 897 F.2d at 968.

Courts generally agree a debtor's insurance policy and any rights a debtor has against an insurer become property of the bankruptcy estate under § 541(a). *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) (cites

therein).  There is also widespread agreement that whether the proceeds of a particular policy are property of the estate is a separate question and requires a policy by policy analysis.  *Unsecured Creditors Disbursement Committee v. Antill Pipeline Construction Co. (In re Equinox Oil Co.)*, 300 F.3d 614, 618 (5th Cir. 2002); *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir. 1993).  If the proceeds, under the policy and governing law in the absence of the bankruptcy, would belong to the debtor when the insurer pays the claim, the proceeds are considered part of the bankruptcy estate.  *Equinox Oil Co.*, 300 F.3d at 618-19; *Edgeworth*, 993 F.2d at 55-56.

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim.  When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.  In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

*Edgeworth*, 993 F.2d at 55-56.  In other words, the issue of insurance proceeds ownership "is dependent upon the nature of the policy and the specific provisions governing the parties' interests in the payment of policy proceeds." *Ledford v. Fidelity Financial Services (In re Hill)*, 174 B.R. 949, 952 (Bankr. S.D. Ohio 1994).

> Under this method of analysis, the Court examines the insurance policy itself to ascertain the type of insurance coverage, the beneficiaries named under the policy, and the extent of the benefits to be paid under the policy to each beneficiary. The policy's treatment of these factors determines whether the proceeds are, or are not, property of the bankruptcy estate.

-11-

*Ford Motor Credit Co. v. Feher (In re Feher)*, 202 B.R. 966, 969-70 (Bankr. S.D. Ill. 1996)(the debtor's and secured creditor's shared interest in casualty policy proceeds were property of the estate where the secured creditor was not the primary or sole beneficiary under the policy).

As part of the analysis of an insurance contract, some consideration needs to be given to whether it creates a third party beneficiary. *See, e.g., McAteer*, 985 F.2d at 118-19 (proceeds of a debtor's policy payable to third-party beneficiary are not property of the estate). In South Dakota, a third-party beneficiary

> 'is one who is given rights under a contract to which that person is *not* a party. [Cites omitted.] Obligations under such a contract, including any obligations to third parties, are created by agreement between the *signatories*...[.] If the signatories so intend, a third party can enforce the contract against the signatory so obligated. But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either. [Cite omitted.]'

*First Dakota National Bank v. Performance Engineering and Manufacturing, Inc.*, 676 N.W.2d 395, 399 (S.D. 2004)(quoting *Motorsport Engineering, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002))(emphasis in original).

III.

The Court concludes the insurance proceeds to which Debtors were entitled on the petition date from State Farm for pre-petition medical expenses arising from the June 30, 2005 accident are property of the bankruptcy estate under § 541(a). Because the insurance policy clearly provided for payment of Debtors' medical

expenses arising from the accident, Trustee Lovald met his *prima facie* burden of showing these funds are property of the estate. No party in interest has come forward to show otherwise.

Property excluded from the bankruptcy estate includes "any power that the debtor may exercise solely for the benefit of an entity other than the debtor[.]" 11 U.S.C. § 541(b)(1)(in pertinent part). This is essentially property owned by another but held in trust by the debtor for someone else's benefit. *Ryan v. Sullivan, Hill, Lewin, Rez, Engel and Labazzo*, 316 B.R. 101, 108 (Bankr. D. Conn. 2004)(citing *Whiting Pools*, 462 U.S. at 205 n.10); *Interchange Bank v. Warde Electric Contracting, Inc. (In re Warde Electric Contracting, Inc.)*, 308 B.R. 659, 664 (S.D.N.Y. 2004)(property held by a debtor as a bailee or agent is excluded from the estate). Property excluded under § 541(c)(2) is property in which the debtor's beneficial interest in a trust is enforceable under nonbankruptcy law and the trustee is not able to access the funds. *Ryan*, 316 B.R. at 108-09. Under 11 U.S.C. § 541(d), when that statute is reduced to its simplest terms, whenever an interest in property is limited in a debtor's hands, it is equally limited in the hands of the bankruptcy estate. *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.)*, 306 B.R. 630, 634 (B.A.P. 8th Cir. 2004). An example of property excluded under § 541(d) would be property on which state law impressed a constructive trust before the bankruptcy. *See Amedisys, Inc. v. National Century Financial Enterprises, Inc.*, 423 F.3d 567, 575-

76 (6th Cir. 2005) (cites therein).

 Foremost, no one has come forward to demonstrate how the medical expense proceeds under Debtors' policy with State Farm are excluded from property of the estate, whether by application of §§ 541(b)(1), 541(c)(2), or 541(d), or any other particular subsection of § 541 or state law under § 541(a)(1). If there is a provision in the State Farm policy, a state statute or regulation, or case law under South Dakota's common law that make any of the exclusions apply, it has not been made known to the Court on this record. That the medical care providers could directly file a claim with State Farm did not make them third-party beneficiaries under the policy since it appears the medical expense provision was created to benefit the injured person, not expressly the medical care providers. *Trouten v. Heritage Mutual Ins. Co.*, 632 N.W.2d 856, 858-62 (S.D. 2001); *Union Central Life Ins. Co. of Cincinnati, Ohio v. Codington County Farmers Fire & Lightning Mutual Ins. Co.*, 287 N.W. 46, 46-49 (S.D. 1939) (mortgagee was express third-party beneficiary under a mortgage clause in a fire insurance policy). No one has shown either state law or the policy gave the medical care providers an independent cause of action against State Farm, and the record does not show any of the medical care providers have a judgment that has been returned unsatisfied. S.D.C.L. §§ 53-2-6 and 58-23-1; *Trouten*, 632 N.W.2d at 858-62. While subrogation claims by insurers are recognized in South Dakota, *see Schuldt v. State Farm Mutual Automobile Ins. Co.*, 238 N.W.2d 270, 271 (S.D. 1975) (an

insurer is entitled to subrogation either by contract or in equity for the amount of the indemnity paid), no one has provided the Court with any South Dakota law establishing medical care providers have a priority claim under the medical expense provisions of a policy such as Debtors' casualty policy with State Farm. *See* S.D.C.L. §§ 58-9-11 and 58-9-28.

Second, to date, no party in interest has identified any valid, pre-petition assignment that transferred the insurance proceeds to someone other than Debtors pre-petition. If such an assignment exists, it has not been proffered and shown to be enforceable under state law. *See, e.g.,* S.D.C.L. § 58-17-61 (health insurance benefits are assignable to certain hospitals; written notice required).

Third, if a medical care provider has a valid, pre-petition lien or other perfected security interest in the insurance proceeds, *see, e.g.*, S.D.C.L. chs. 44-2 and 44-12 and *In re Finesha Randle Dawson*, Bankr. No. 00-40405, slip op. (Bankr. D.S.D. Dec. 7, 2000), that security interest does not remove the insurance proceeds or settlement funds from the bankruptcy estate. *Whiting Pools,* 462 U.S. at 203-04; S.D.C.L. § 44-1-7 (a lien does not confer any title). The medical care provider must, however, timely assert the security interest. Since proofs of claims have not yet been required, the Court is reluctant to herein decide whether an assertion of a security interest in the insurance proceeds in the future will be considered timely.

For Debtor Sharon Klundt, the entire $5,000.00 policy limit came into the

-15-

bankruptcy estate as an asset since her pre-petition medical bills, for which she could make a claim under the policy, exceeded the policy limit. This would include the $178.00 already paid to Albrecht Chiropractic on December 2, 2005 for services rendered between July 1 and August 22, 2005. While this small sum would not be recoverable as a preference, *see* 11 U.S.C. § 547(a)(8), it may be recoverable as a post-petition transfer of estate property under 11 U.S.C. § 549, which has no monetary limitation for recovery. *But also see* 11 U.S.C. § 549(d) (action under § 549 must be commenced timely). Property of the bankruptcy estate would also include, if still recoverable under § 549, the $91.00 State Farm paid to Dr. Drake post-petition for post-petition services. Since the bankruptcy estate was entitled to the whole $5,000.00 policy limit on the petition date, State Farm's post-petition payments to Dr. Drake for post-petition services has inappropriately diverted estate property to a post-petition creditor.

For Debtor David Klundt, $1,289.30 in medical payments insurance proceeds come into the bankruptcy estate. This includes $1,119.00 owed to Avera Queen of Peace Hospital for services on July 1, 2005; $109.30 for services by James Valley Imaging on July 1, 2005; and $61.00 for services by Avera St. Benedict Clinic in Parkston on July 6, 2005. The balance available under the policy, $3,710.70, is not property of the estate and may remain available to pay any post-petition medical bills

-16-

he may have that arose from the accident.[3]

The same result is reached regarding the $15,591.00 in settlement funds from Progressive Insurance negotiated by Attorney King. No one has identified any provision in the insurance policy or a state statute, regulation, or decision under common law that would exclude the settlement funds, in whole or part, from the bankruptcy estate. No party in interest has stepped forward to claim an assignment of the funds or a security interest in them. As noted before, whether State Farm has a subrogation interest in the settlement funds will be decided separately.

Finally, neither Debtors nor Dr. Drake have identified any Bankruptcy Code statute that permits his unpaid $806.26 claim for post-petition services to be paid from bankruptcy estate funds.[4] There has been no showing he has an enforceable assignment, security interest, or other interest under state law in the insurance proceeds or settlement funds. Accordingly, like other post-petition debts, Dr. Drake's bill for post-petition services will remain Debtors' personal responsibility.

While the Court sympathizes with Debtors that not all their accident-related bills may be paid from the insurance proceeds or settlement funds, this is not a problem

---

[3] The estate's settlement with the alleged tort-feasor's insuror, however, may relieve State Farm from further medical claims. *See Hart v. State Farm Mutual Automobile Insurance Co.*, 248 N.W.2d 881, 883-84 (S.D. 1976). That issue is not before the Court and would be outside its jurisdiction.

[4] If Trustee Lovald is able to recover the $91.00 State Farm already paid Dr. Drake for other post-petition services, Dr. Drake's bill for unpaid post-petition services will increase to $897.26.

-17-

the Court can remedy on any general equitable principles not identified under state law. *See In re Petersen*, 273 B.R. 586, 592 (Bankr. N.D. Iowa 2002). Consequently, in light of the state's present exemption and insurance statutes and any applicable insurance policy and related agreements, an injured debtor needs to consider whether his or her medical care is on-going and carefully assess the status of insurance issues and tort-related causes of action before choosing a chapter for relief and filing a petition in bankruptcy.

Obviously, a different insurance policy, different facts, or a different showing of applicable law may yield a different result. Under this record, however, $6,289.30 in medical benefits from Debtors' auto insurance policy and the entire proposed settlement funds of $15,591.00 are property of the bankruptcy estate. Dr. Drake's post-petition claims are not payable from these funds. An appropriate order will be entered.

Dated this 3rd day of March, 2008.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the attached Service List.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

David Lee Klundt
702 W. McCabe St.
Mitchell, SD 57301

Sharon Ruth Klundt
701 W. McCabe St.
Mitchell, SD 57301

David J. King, Esq.
809 W. 10 St. Ste A
Sioux Falls, SD 57104

State Farm Insurance
Subrogation Services
Post Office Box 2373
Bloomington, Illinois 61703-2372

Dr. Timothy Drake, D.D.S.
103 West 12th Avenue
Mitchell, SD 57301

Bruce J. Albrecht DC
40679 252nd St.
Mitchell, SD 57301